ALLEN & Another *v.* WITHROW & Another.

ON APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF IOWA.

Argued December 11th and 12th, 1883.—Decided January 14th, 1884.

*Deed—Equity—Frauds, Statute of—Iowa—Partnership—Statutes—Trust.*

1. The facts in this case disclose no trust attached to the estate and property in the defendants' hands which a court of equity should enforce ; at the best they show a promise—without consideration good or valuable—of a simple donation, to be subsequently made, with no relationship of blood or marriage between the parties, and therefore until executed, valueless.

2. A deed of real estate in blank in which the name of the grantee is not inserted, by the party authorized to fill it, before the deed is delivered, passes no interest.

3. Under the Statute of Frauds of Iowa in force when the transactions in controversy took place, a trust could not be created in relation to real estate, except by an instrument executed in the same manner as a deed of conveyance ; but a trust of personalty could be created by parol, provided

the evidence of the trust was clear and convincing. Mere declarations of a purpose to create a trust were of no value, if not carried out.

4. Real estate owned by a partnership, purchased with partnership funds, is, for the purpose of settling the debts of the partnership, and of distributing its effects, treated in equity as partnership property.

Bill in equity by heirs at law of Thusie M. Allen to enforce a trust in relation to real and personal estate claimed to have been made in her favor in her lifetime. Answer denying the trust; and cross-bill by one defendant asking that plaintiffs might be perpetually restrained from setting up their claim. Judgment below for defendants in the original suit and sustaining the cross-bill. Plaintiffs in original suit and defendants in cross-suit, appealed.

*Mr. C. C. Cole* and *Mr. B. F. Kretzinger* for appellants.

*Mr. George G. Wright* for appellee.

Mr. Justice Field delivered the opinion of the court.

In November, 1875, one John F. Tracy, now deceased, executed to the defendant, Thomas F. Withrow, a deed of a large amount of property, real and personal, of great value, situated in Iowa. It is alleged that this deed, though absolute in form, was made in trust for one Thusie M. Allen, also now deceased, and the present suit is brought by her heirs-at-law to charge Withrow, as trustee, and compel him to account to them for the property. Withrow denies the alleged trust, and claims that he owns in his own right an undivided half interest in the property, and that the other undivided half belongs to his co-defendant, Wm. L. Scott, as assignee of Tracy. Scott has filed a cross-bill setting up his title and praying that it may be established. The court below sustained the claims of both defendants and dismissed the bill, and the case is brought here on appeal from its decree.

The facts which led to the execution of the deed in question, and upon which a trust is sought to be established, collected, so far as practicable, from a mass of conflicting testimony contained in a record of over 850 closely printed pages, are substantially as follows:

In the year 1868, when the Chicago, Rock Island & Pacific Railroad Company—a corporation created by the State of Illinois—was about to extend its road from Des Moines to Council Bluffs in Iowa, a company was formed, consisting of B. F. Allen, of Des Moines, Ebenezer Cook and John P. Cook, of Davenport in that State, to purchase land necessary for the stations and use of the railroad company between De Sota and Council Bluffs, and also other lands adjoining or near the several stations located by the engineer of the company. The agreement between the parties was at the time a verbal one, but in April, 1870, a memorandum was signed by them, giving its terms and reciting also the purchases which in the interval had been made. Among other things, it provided that Allen should furnish the money to make the purchases, and provide for the taxes and expenses; that the title to the property should be taken in his name as trustee for the joint account of the parties, and that the net proceeds should be divided between them as follows : one undivided half to Ebenezer Cook, one-fourth to Allen, and the remaining fourth to John P. Cook. The agreement also provided that Allen should keep an account of the amounts paid out by him, and of the sales, receipts, and expenses, so that from his books a statement might at any time be made showing the condition of the property, the amount sold, and the prices received; that the sales should be made by John P. Cook and Allen on the best terms they could obtain, and by their joint action when practicable; that from the proceeds of the sales Allen should retain the interest on his advances, the taxes on the property, and the expenses incurred, and then pay the advances made for the purchase of the property; and that the money and property remaining in his possession, including notes and contracts, after such payments, should be regarded as net profits, and be divided in kind, or converted into money and then distributed, and in either event according to the respective interests of the parties as mentioned above.

During this time Tracey was president of the railroad company, and though he is not named in the agreement, it is conceded that he was entitled to one-half of the interest represented by Ebenezer Cook, and had a right to control and dispose of it.

It appears that he had, previously to the formation of the land company, suggested to different parties that in case a litigation then pending, affecting the company, should terminate favorably, a good opportunity would be afforded to make a successful venture in the purchase and sale of land along the line of the road west of Des Moines; and that upon this suggestion the land company was formed. It appears, also, that in a conversation with Withrow, one of his counsel in the litigation referred to, upon the subject of a venture of this kind, Tracey had expressed a desire that his friends should be benefited by the venture; and that he, Withrow, should participate in it, advising him to bear this in mind in making out his bill for legal services. After the land company was formed, and the agreement made had been acted upon, Tracey was reminded by Withrow of this conversation, and of the understanding he had from it, that he was to have an interest in the venture. Tracey not only admitted a similar understanding on his part, but declared that Withrow had an interest in it, and in March, 1871, obtained from Ebenezer Cook a statement in writing to that effect. This statement, after referring to the agreement of the land company and the provision that one-half of the profits arising from the purchase and sale of real estate under it were to be his property; and reciting that it was understood that Withrow and one Johnson should have an interest in the profits of the venture, the amounts of which had not been specified, but were to be thereafter fixed by Tracey and himself, and that the remainder of said profits (if any) should be equally divided between Tracey and himself, declares that he, Cook, holds the interest specified in the agreement, and all amounts to be received thereon, in trust for the uses and purposes mentioned; that is to say, to pay from such receipts to Withrow and Johnson such amounts, respectively, as should be agreed upon as aforesaid, and to hold the one-half of the remainder in trust for Tracey, his heirs and assigns.

Subsequently, in October, 1872, Withrow, for the nominal consideration of one dollar, executed to Tracey a transfer of his interest in this contract and declaration of trust. In December following, Johnson executed to Tracey a similar transfer upon a like consideration.

Withrow testifies that this transfer was made by him not for the purpose of conveying the ownership of his interest to Tracey absolutely, but to facilitate a settlement with Allen of the affairs of the land company, which were embarrassed by improvident expenditures, and with an understanding that if Tracey realized anything out of the venture he should give Withrow his share. This testimony is corroborated by the statement contained in the deed subsequently executed by Tracey to Scott, that the transfer by Withrow was made upon an agreement that his interest should be protected for his benefit.

In November, 1875, Tracey executed to Withrow a deed of all the interest which he then had, or which might thereafter accrue to him, in the lands, notes, and bills receivable arising from the contracts, declaration of trust, and assignments mentioned. This deed recites the original agreement between Allen and the two Cooks, the subsequent declaration by Ebenezer Cook of the interest of Withrow, Johnson, and Tracey in the proceeds of the venture and the transfers executed in 1872 by Withrow and Johnson to Tracey, and in addition to conveying the property, authorizes the grantee, in his own name, to enforce a proper partition of it, and to collect for his own use any sums of money which might accrue to the grantor under the contracts, declaration of trust, and assignments mentioned.

Previously to the execution of this deed to Withrow, Allen had become bankrupt, and in due course of proceedings his property had been transferred to Hoyt Sherman, as assignee in bankruptcy. Subsequently a suit was commenced in the Circuit Court of the United States involving the title to the whole of the property of Allen in the land company. In that suit, the Charter Oak Life Insurance Company and others were complainants, and Allen and Sherman, his assignee in bankruptcy, were defendants. Withrow intervened and filed a cross-bill, claiming partition of the interest of Tracey held by him under the deed of November, 1875. By the decree of the court, entered in the fall term of 1877, which appears to have been made upon a compromise settlement, Withrow's

title to an interest of one-fourth in the property of the land company was recognized, and set apart to him in severalty. The value of this interest had been previously appraised by competent parties, acting under the authority of the court, at $80,000.

Tracey died in February, 1878. In December previously he addressed a communication to the defendant, William L. Scott, in which, after reciting that there had been reserved to him and parties interested with him a one-fourth interest in the land company, which he had deeded to Withrow, he says as follows:

",I hereby acknowledge that of the interest so belonging to me, you (William L. Scott) were the original owner of one-eighth of the entire company, or one-half owner of the interest standing in my name, and I hereby authorize T. F. Withrow to transfer and deed to you one-half of the interest conveyed by me to him, you paying Mr. Withrow one-half of all expenses and charges the interest held by me may be liable for."

Soon afterwards Tracey made a formal deed to Scott, conveying to him an undivided half of the lands, notes, contracts and mortgages awarded and set apart to Withrow by the decree of the Circuit Court of the United States under the deed of Tracey to him of November 16th, 1875, and instructing Withrow to transfer that interest to Scott. This deed recites, among other things, that Withrow had transferred his interest to Tracey under an agreement between them that the same should be protected by Tracey for his (Withrow's) benefit; that one-half of Tracey's interest in the lands and assets conveyed by his deed to Withrow was for the use of Withrow in his own right; that the other half was in trust for Tracey, his heirs and assigns; and that Withrow was "entitled, in his own right, to one-half, in value, of all lands, contracts, notes and mortgages which have been awarded and set apart to him, and holds the other one-half thereof in trust for the said John F. Tracey, his heirs, executors and assigns."

Upon these deeds of Tracey—the one to him of November 16th, 1875, and the deed to Scott of December 12th, 1877—the

defendant Withrow relies to defeat the suit of the complainants. Their ground for charging him as trustee is the alleged purpose of Tracey to give to Mrs. Allen the beneficial interest in the property held by him in the land company, and its execution by his deed to Withrow. Their story of this purpose and its supposed execution is this : that some time in June, 1875, Allen and his eldest daughter accompanied him, by his invitation, on an excursion to St. Paul, Minnesota, given by the directors of the Northwestern Railway Company ; that during the excursion Tracey had several conversations respecting Allen's circumstances since his bankruptcy, and especially as to its effect upon the property and affairs of the land company, and that they resulted in Tracey's promising to give his interest in the property of that company to Mrs. Allen, with whom he was well acquainted, and of whom he had pleasant recollections; that after the return of Allen to Chicago he went to the office of Withrow and engaged him to prepare the deed for Tracey to sign ; that Withrow accordingly drew a deed of transfer of Tracey's interest, specifying it to be one undivided fourth of the net profits arising from the joint account under the contracts and declaration of trust ; that the name of the grantee was left in blank; that Allen went to New York, taking this deed with him, and that Tracey there, on the 11th day of October, 1875, signed and acknowledged it and delivered it to Allen; that Allen returned to Des Moines and delivered the deed to his wife; and that the reason why the name of the grantee was left in blank was because he feared the importunities of his creditors to obtain the property, and that Tracey authorized him to insert her name in the blank, or the name of any other person that might be deemed best.

The story further is, that afterwards Allen consulted Charles T. Ransom, an attorney at law at the time in Des Moines, respecting the insertion of the name of a grantee, and, whilst in consultation, another lawyer by the name of Edmunds came into his room, and, the whole matter of Tracey's rights in the property of the land company being discussed, it was the opinion of both Edmunds and Ransom that his interest was one-half; and for that reason it was resolved to procure a new deed

specifying such to be his interest instead of one-fourth; that the question of a proper person to whom such new conveyance should be made, was discussed, and the name of Withrow was finally settled upon as trustee; that Withrow was advised of this fact and assented to it; that thereupon another deed, substantially like the first, except that its recital showed Tracey's interest to be one-half, was prepared by Ransom and taken by him to New York, and was there executed by Tracey, to whom the reason for changing the form of the deed was explained; that Ransom brought this second deed to Iowa and handed it to Allen, who delivered it to his wife, and it was kept by them until February 24th, 1876, when it was sent to Ransom for his use in preparing a petition of intervention, and other pleadings, in the case of the Charter Oak Life Insurance Company and others against Allen and Sherman, his assignee, then pending in the Circuit Court; that it was not delivered to Withrow until about the time the decree was rendered in 1877; that, after that decree, Allen called upon Withrow to turn the property over to the heirs of his deceased wife; and that Withrow then, for the first time, claimed to own one-eighth of the property, or one-half of what had been recovered, in his own right, and refused to convey the other half except upon the written order of Tracey; and that he has ever since maintained this position.

The statement that the deed with a blank for the name of the grantee was drawn to transfer an interest to Mrs. Allen, or to create a trust in her favor, is contradicted by the testimony of Withrow, who says that it was a substitute for one drawn to Schuyler R. Ingham, recommended by him as a proper person to take charge and dispose of the interest of Tracey in the property of the land company; that the execution of the deed to Ingham having been delayed for a long time, Allen suggested that a new deed with the name of the grantee in blank should be sent to Tracey so that some other person, if Ingham was not acceptable to him, might be inserted, stating that Tracey had promised to convey his interest to Withrow, and that if, in winding up the affairs of the company, there was anything left of it, he would give it to Mrs. Allen. The deed itself shows, by its use of the masculine pronoun in all places

where reference to the grantee is made, that the draftsman never contemplated its execution to a woman.

Subsequently, according to the testimony of Withrow, the deed was shown to Ransom, who advised that the interest of Tracey in the property of the land company was one-half instead of one-fourth; and who, at the request of Allen, drew another deed for Tracey to sign similar to the one in blank, except that it represented Tracey's interest to be one-half of the property, and made Withrow the grantee.

The statement that Withrow consented to act as trustee of Mrs. Allen, or that the deed of Tracey to him was executed upon any trust for her, is also denied by Withrow; and it is inconsistent with the declarations and conduct of both himself and Tracey. Immediately upon the request of Allen for the property, and under date of December 8th, 1877, he wrote to Tracey, informing him of the decree of the Circuit Court, and the request of Allen and the refusal to comply with it in the absence of instructions from him.

" You will remember," he writes, "that one-eighth interest of the entire speculation was awarded to me. The other eighth of the property recovered by me I hold subject to your order. I have understood from Mr. Ransom, and have inferred from your conversation with me, that before the commencement of this suit you intended to be liberal to Mrs. Allen in disposing of your share ; and Mr. Allen, relying upon this, has requested me to convey the one-eighth interest which I hold for you to him. In view of the fact that I have never received definite instructions from you to make any disposition of it, and the further fact that Mrs. Allen is now dead, I have not felt at liberty to make any conveyance without instructions from you in writing." ·

No answer was made to this letter, nor was any instruction given by Tracey as to his wishes or intentions on the subject, except such as are found in the paper addressed to William L. Scott, under date of December 12th, 1877, and in the deed executed to him soon afterwards; and these, as already seen, negative the idea that Withrow was to hold the property for the benefit of Mrs. Allen.

In this communication, it is seen, Withrow asserts a right to one-eighth interest in the entire property of the land company, as having been awarded to him. If this claim of an interest in the property had been a false and fraudulent one, set up to defraud others, we should expect some denial of it from Tracey; but instead of that we find its correctness affirmed by him. It is difficult to believe that a claim for property, estimated at the time to be worth $40,000, would have received recognition from one who, if the claim was fraudulent, knew it to be so. On the contrary, we should expect that it would meet with instant and indignant repudiation.

But if we admit the statement of the complainants as to the alleged promise of Tracey to give his interest in the property of the land company to Mrs. Allen, and as to the execution of the two deeds—the one in blank and the one to Withrow— there is no case shown for the relief prayed by the bill.

The promise alleged to have been made in conversation with Allen and his daughter on the trip to St. Paul was without consideration, good or valuable; there was no relationship, by blood or marriage, between Mrs. Allen and Tracey. It was the promise of a pure donation to be subsequently made ; and, until executed, it was, in a legal view, valueless.

The deed in blank passed no interest, for it had no grantee. The blank intended for the name of the grantee was never filled, and until filled the deed had no operation as a conveyance. It may be, and probably is, the law in Iowa, as it is in several States, that the grantor in a deed conveying real property, signed and acknowledged, with a blank for the name of the grantee, may authorize another party, by parol, to fill up the blank. *Swartz* v. *Ballou*, 47 Iowa, 188 ; *Van Etta* v. *Evenson*, 23 Wis. 33 ; *Field* v. *Stagg*, 52 Missouri 534. As said by this court in *Drury* v. *Foster*, 2 Wall. 24, at p. 33 :

"Although it was at one time doubted whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion at this day is, that the power is sufficient."

But there are two conditions essential to make a deed thu

executed in blank operate as a conveyance of the property de-
scribed in it; the blank must be filled by the party authorized
to fill it, and this must be done before or at the time of the
delivery of the deed to the grantee named. Allen, to whom it
is stated the deed was handed, with authority to fill the blank
and then deliver the deed, gave it to his wife without filling
the blank, and she died with the blank unfilled.

The deed of Tracey to Withrow embraced real as well as
personal property. It was for the purchase and sale of real
property that the land company was formed, and by the terms
of the contract of association all the property of the company
remaining after payment of taxes, expenses, and advances, was
to be deemed profits, and divided in kind or converted into
money and then distributed. Though the declaration of trust
by Ebenezer Cook speaks of the interest of Tracey in the land
company as an interest in its "profits," that term is used with
reference to its meaning as declared in the contract of associa-
tion, to which that declaration of trust refers, and to which it
is annexed.

In the partition by the decree of the Circuit Court of the
United States of the interest conveyed to Withrow, "lands,
lots, notes, contracts, and mortgages" are specified as awarded
and set apart to him. So far as the real property is concerned,
no trust in relation to it could be established under the Statute
of Frauds of Iowa in force when the deed of Tracey was signed,
except by an instrument in writing executed in the same man-
ner as a deed of conveyance. The language of the statute is,
"declarations, or creations of trust, or powers in relation to
real estate, must be executed in the same manner as deeds of
conveyance, but this provision does not apply to trusts resulting
from the operation or construction of law." The statute also
enumerates, among the contracts in reference to which no
evidence is competent unless it be in writing and signed by the
party or his lawfully authorized agents, "those for the creation
or transfer of any interest in lands, except leases for a time not
exceeding one year."

So far as the personal property conveyed to Withrow is con-
cerned, it must be admitted that a trust may be established by

parol evidence; but such evidence must be clear and convincing, not doubtful, uncertain, and contradictory, as in this case. The evidence must consist of something more than loose conversations with third parties. The declarations of the grantor relied upon must be made at the time of his conveyance or whilst he retains an interest in the property, and be so connected with the conveyance as to justify the conclusion that it was made or is held in execution of the purposes declared. Declarations of a purpose to create a trust not carried out are of no value, nor are direct promises to that effect unaccompanied with considerations turning them into contracts.

The deed of November 16th was handed to Ransom to be delivered to Withrow without any declaration from Tracey as to the purpose for which it was made or the considerations by which it was supported. Nothing was said at that time which could change the absolute character of the instrument, nor is there any evidence of any declarations subsequently made, by parol or in writing, by the grantor with respect to that deed, except such as are found in the communication to Scott and the deed to him.

It does not affect the conclusion, therefore, whether we treat the whole property conveyed to Withrow as real or personal property, or as consisting of both. Real property owned by a partnership and purchased with partnership funds is, for the purpose of settling the debts of the partnership and distributing its effects, treated in equity as personal property. It matters not whether it be so treated here. In any view, no legal trust was created with respect to the property in favor of Mrs. Allen which she could have enforced had she been living, or which can now be enforced by her heirs-at-law.

*Decree affirmed.*