BRIGHT *et al. v.* LAND & RIVER IMP. Co. *et al.*

*(Circuit Court, W. D. Wisconsin.* June 6, 1890.)

PARTNERSHIP—SURVIVING PARTNER OF FIRM—SALE OF REAL ESTATE.
    Land purchased by a surviving partner at sheriff's sale, under an attachment in a suit by such partner on a debt due the partnership, does not become partnership real estate, which will descend to the heirs of the deceased partner, so as to prevent the surviving partner from converting it into money by a sale.

In Equity.
*Michael S. Bright,* (*I. C. Sloan,* of counsel,) for complainants.
*F. W. Downer* and *Pinney & Sanborn,* for defendants.

BUNN, J. This is a suit brought by the complainants, who are citizens of Indiana, as the heirs at law of Michael S. Bright, deceased, seeking to charge an undivided one-half interest in a certain 80 acres of land lying in Douglas county, Wis., in the hands of the defendant the Land & River Improvement Company, with a trust in favor of the said complainants as such heirs at law. The case turns wholly upon questions of equitable cognizance, and the leading facts are as follows: In 1856 one Michael S. Bright, the father of the complainants Michael S. Bright and Sarah B. Bright, and the husband of the complainant Sarah L. Bright, formed a law partnership with the defendant Hiram Hayes, at Superior, Douglas county, Wis., which continued until 1862, when the partnership known as Bright & Hayes was practically dissolved, Bright going to New York, and Hayes going to Washington, and drifting thence into the war of the Rebellion. Hayes returned to Superior after the war, and resumed the practice of law; but there was never any settlement or winding up of the affairs of Bright & Hayes. On August 1, 1858, one Ambrose B. Burbank became indebted to the firm of Bright & Hayes in the sum of $500, for legal services. In November of

1858 they brought an action against Burbank to recover the amount, and obtained a judgment, which is conceded to have been void for want of jurisdiction; Burbank having become a non-resident of the state, no personal service being had, and it appearing that there was no property of his in the state which might be attached. Nothing further was done by Bright & Hayes to collect this Burbank claim, and it remained in the same condition until August, 1880, when Hiram Hayes, as surviving partner of the firm of Bright & Hayes, brought an action in the circuit court of Douglas county, Wis., to recover the claim, with interest from 1858. In this action, Burbank remaining still non-resident, an attachment was issued, and levied upon the 80 acres of land in question, to secure the debt. Hayes, as such surviving partner, on the 19th July, 1881, recovered a judgment against Burbank for $1230.90, with $54.46 costs. Execution was issued, and the premises sold at sheriff's sale September 12, 1881, to Hiram Hayes for $1,200, and the usual sheriff's certificate of sale issued. Under that certificate the debtor had 12 months in which to redeem, and his creditors 3 months more, making 15 months that elapsed before the sale became absolute. No redemption was had, and on 20th December, 1882, a sheriff's deed issued to Hayes. Hayes bid in the land on account of the debt, it not appearing that there were any other bidders at the sale, he having advanced and paid the costs and disbursements in the two actions mentioned and the costs of sale. Michael S. Bright, the former partner of Hayes, had died many years previous, on December 4, 1868, intestate. Administration of his estate had been granted in Jefferson county, Ind., to Caleb T. Lodge, who it appears was discharged from his trust on February 3, 1874. Administration was also granted in Wisconsin to defendant Hiram Hayes, on April 1, 1872, and on May 5, 1873, an order was made declaring that said administrator be discharged fully and finally from such administration, etc. Hayes has never paid anything to the personal representatives of Michael S. Bright on account of this claim, nor accounted to them for their share of the proceeds, though he avers that he is, and ever has been, ready and willing so to do; nor have they ever demanded an accounting. On the 13th of July, 1885, Hayes, for the consideration of $2,800, sold and conveyed the land in question, by warranty deed, to the defendant, the Land & River Improvement Company, this being, as appears, the full and fair value of the land at that time, and that being the first opportunity to sell that had presented itself.

The complainants, by reason of these facts, claim that a trust arose in their favor, and attached to the land in the hands of Hayes, to the extent of an undivided one-half interest, when he bid it in at the sheriff's sale, and that he had no right, power, or authority, as surviving partner, to convert the land into money by a sale; that the land, upon the sale to Hayes, became partnership real estate, and that Hayes could not convert it into money in order to reimburse himself for the costs and expenses of the proceeding, and account for one-half of the net proceeds to the personal representatives of his deceased partner; and

that the trust which arose in favor of the heirs of Michael S. Bright followed the land, upon the sale by Hayes to the Land & River Improvement Company, into its hands, and still subsists in favor of the complainants.

There are some other important questions in the case as to the title to the land, but the question I wish to consider is whether this contention of the complainants can be sustained, allowing that the Land & River Improvement Company took title from Hayes by virtue of the deed by Hayes to it of 13th July, 1885. I am of opinion that it cannot. I think that no trust ever attached to the land in favor of the complainants; that it never was, in legal or equitable contemplation, partnership real estate. The claim originally was personal property, a mere chose in action belonging to the firm of Bright & Hayes. It was supposed by the parties, in the life-time of Michael S. Bright, to be worthless and uncollectible. Upon the death of Michael S. Bright, the legal as well as equitable title survived to and was in Hiram Hayes. He had full power and authority, as surviving partner, to go on and wind up the affairs of the partnership, and, among other things, to collect this debt. Nothing was done until 12 years after the decease of Michael S. Bright, Hayes supposing the claim was worthless. Finally Hayes ascertained, as he supposed, that this 80 acres of land stood on the record in Ambrose B. Burbank's name, and began suit and attached the land. In doing so, Hayes entirely ignored two certain deeds executed by Ambrose B. Burbank for this land,—one to Lester W. Markham of 5 acres, and one to Eleazar A. Burbank of 75 acres,—on the ground that those deeds were severally void for want of sufficient definiteness in the description of the land sought to be conveyed. After obtaining judgment, Hayes caused the land to be sold, and bid it in in satisfaction of the debt and costs. It seems to me this bidding in of the land was a necessary incident in the collection of the debt, there evidently being no other bidders at the sale, and therefore no other way or hope of collecting the claim. When did this claim become partnership real estate, and, as such, descend to the heirs at law of Michael S. Bright? Supposing such a thing could take place 12 years after Michael S. Bright's death, it is evident that when Hayes bid in the property to satisfy the debt the land could not have been considered as partnership land, which would descend to the heirs, because Hayes, as surviving partner, held no absolute title to it. He held a certificate of sale which was redeemable in 15 months. Whether it would be redeemed, nobody could say. He must wait and see. If the land had been redeemed, then, certainly, the claim would consist in personal estate, which would go to personal representatives, and not descend to heirs. Or, suppose Hayes, before the time to redeem had expired, having only in view his duty to do his best as surviving partner to collect the debt, had assigned the certificate to a third person for the amount of his bid and interest, could there be any doubt that he might lawfully do that? And, having done it, would there be any doubt that the money received would belong to him as surviving partner, subject to the

right of the personal representatives of the deceased partner to an accounting after the debts of the partnership were paid, and the business wound up? I think not. And it seems equally clear to the court that, the land not having been redeemed, Hayes might lawfully sell it as he did in order to get the debt into money, into a distributable shape, so as to wind up the affairs of the partnership. And how otherwise was he to get his costs and expenses out? He had shown very commendable energy and perseverance in hunting out this land, and in prosecuting and defending several other suits as he did, to defend and perfect the title, and in selling the land to get the claim into money, in which several proceedings he had incurred considerable expense,—somewhere between $300 and $400, as the testimony shows. How should he be reimbursed these costs and expenses if he could not sell the land? *Allen* v. *Withrow*, 110 U. S. 119, 3 Sup. Ct. Rep. 517. There was nothing else from which the debt could be made. This land, assuming that Burbank had title, constituted a fund out of which Hayes must make the debt, if made at all. He treated it, he says, and I think correctly, just as he would a pile of lumber, or any personal chattel, the purpose being to get the debt out of it. When the sheriff offered it for sale, and there were no other buyers, he bid it in to save the debt, and then sold it the first opportunity. The claim being in the first instance personal property, the mere accident that, in the course of the collection, it assumed the form of real estate, would not change its character in the eye of the law, nor the contingent interest of personal representatives into partnership real estate, which would descend to heirs.

There are questions in the litigation regarding the title which I do not find it necessary to determine definitely, as it would be necessary if the case rested wholly upon them. The land was originally entered by Michael O'Connor, who, on October 25, 1856, conveyed it to Ambrose B. Burbank. On October 19, 1857, Ambrose B. Burbank deeded to Lester W. Markham "five square acres in the north-east corner of the south-west half of said section twenty-seven," etc.; and on October 4, 1868, Ambrose B. Burbank conveyed to Eleazar A. Burbank "seventy five acres of land, being in the west half of the south-west quarter of section twenty seven, township forty-nine, range fourteen," etc. Afterwards Eleazar A. Burbank, on October 28, 1886, purchased the five acres from Markham, and brought suit in ejectment against the Land & River Improvement Company to recover the 80 acres. That suit was defended by the land company, who employed Hayes as their attorney. The result of it was that a compromise was effected, by which Eleazar A. Burbank, for the sum of $2,000, conveyed the land to the Land & River Improvement Company. A question is made as to the effect of this deed of Eleazar A. Burbank to the land company,—whether it conveyed title; and that question turns upon the sufficiency in the description of land in the deed of 5 acres to Markham and that of 75 acres to Eleazar A. Burbank, the complainants contending that these deeds were both absolutely void for uncertainty in the description. If these deeds

were void, then the sheriff's deed to Hayes and Hayes' deed to the land company conveyed the title. If these deeds are valid, there was no interest remaining in Ambrose B. Burbank, the debtor in the attachment suit, to be levied upon, the sheriff's deed conveyed no title, and the complainants have no claim against the land company upon their own chosen theory of the case.

Without going into the question at length, I would say that, in my judgment, the deed from Burbank to Markham of the 5 acres would probably be void for uncertainty, but that the deed of Ambrose B. Burbank to Eleazar A. Burbank would not be absolutely void, but probably conveyed an undivided 75-80 of the land to the grantee, (see Freem. Co-tenancy, § 96;) or, if not that, would give the grantee the equitable right to have the 75 acres located, either by agreement or by suit. The description in this deed is complete, except that it does not locate definitely the 75 acres conveyed in the 80 from which it is taken. I cannot think, however, that it conveyed no substantial interest in the land, either legal or equitable. But I am contented to decide the case on the theory of the complainants, that the sheriff's deed conveyed the title to Hayes, and Hayes conveyed it to the land company. Upon that theory, I am satisfied that the complainants have mistaken their remedy wholly. If they had asked for, or would have taken a decree for, an accounting against the defendant Hayes, on the basis of the sale by him to the land company, they might have had all the relief in this suit that they seem to be entitled to upon the facts. But though the court on the hearing (it appearing that the complainants were the proper personal representatives of Michael S. Bright, deceased) offered them a decree granting the above relief against Hayes, they declined to accept it, but dismissed the bill as to him, choosing to rely wholly upon an appeal from the decree dismissing the bill as to the Land & River Improvement Company. Probably there are few men who, in the state of the title to the tract of land in question, would have persevered in pushing the claim against Burbank to collection, and it is quite as probable that most people, having a half interest in that almost desperate $500 debt against a non-resident, after looking upon it for so long a time as worthless, would have been satisfied with an amount of money exceeding by several times the amount of the original claim; and in all likelihood these complainants would also have been satisfied but for the one circumstance that, since the sale of the land to the land company in 1885, the land, owing to the general improvement in a new country, has risen very rapidly in value. The prize is tempting, and, if the complainants can win it in another court, it will be their right to do so.