## RILEY v. BONDI.

### No. 9552.

Circuit Court of Appeals, Eighth Circuit.

March 30, 1933.

O. C. Brewer and George K. Cracraft, both of Helena, Ark., for appellant.

John I. Moore, of Helena, Ark., J. B. Daggett, and C. E. Daggett, both of Marianna, Ark., and J. G. Burke and John I. Moore, Jr., both of Helena, Ark., for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant is receiver of the Interstate National Bank of Helena, Ark. He brings this action to recover against appellee, Ike Bondi, as a stockholder of said bank, a 100 per cent. assessment, which was levied on his stock by the Comptroller of the Currency.

In 1920 appellee contracted for the purchase of ten shares of the capital stock of this bank from one Seelig, and twenty shares from one Mundt. In each instance the seller indorsed the certificate of stock in blank and drew with the stock attached on appellee for the amount due. Appellee paid the drafts, took over the stock, and had the bank issue new certificates. In place of the canceled Mundt shares the bank issued two new certificates—one for ten shares, to Solomon Bondi, and one for ten shares, to Ike Bondi's wife, Dora Bondi. For the Seelig stock it issued ten shares to Solomon Bondi. Later, when the capital stock of the bank was decreased, which was a few years prior to the closing of the bank, the certificates in the name of Solomon Bondi (the son) were canceled and a new certificate issued to him for ten shares. Thereafter the books of the bank showed ten shares of stock of the par value of $100 per share in the name of Solomon Bondi. At the time of the original placing of the stock in the name of Solomon Bondi, he was six years of age. When the bank closed in 1931 and was placed in the hands of the Comptroller of the Currency, he was seventeen years of age.

The case was tried to a jury. No motion was made for a directed verdict, and the only questions here presented arise on an exception to a portion of the court's charge and a refusal of the court to give a requested instruction. That part of the court's instructions objected and excepted to is this: "Defendant, however, says that he bought stock, but bought it for his son and paid for it with his son's money. That leaves but one ques-

tion for you to determine as a jury, that is this, did Mr. Bondi when he bought the stock, buy it with his son's money, and pay for it with his son's money, or did he buy it with his own money, and have the stock issued in the name of his son. The fact that the son was a minor at the time of the purchase of the stock makes it impossible for him to assent to its purchase, and in that way bind himself. So, if Mr. Bondi, at the time he purchased the stock purchased it with his own money and made a gift of it to his son, he would still be liable, if the bank failed. I think I make the issue clear, that you have to pass upon. Did, Mr. Ike Bondi, at the time he purchased this stock and had it issued in the name of his son, purchase it with his own money and give the stock to his son, or did he purchase it with his son's money and had it issued in the name of his son. If he purchased it with his son's money and had it issued in the name of his son, then defendant would not be liable for this assessment. If on the other hand, he purchased it with his own money and gave it to his son, by having the stock issued in the name of his son, he would be liable, inasmuch as the son is a minor."

The instruction requested, which was refused, and to which due exception was taken, is this: "If you find from a preponderance of the evidence that the defendant, Ike Bondi, contracted for the stock, and caused it to be issued in the name of his minor son, that you will find for the plaintiff, and that it is immaterial whose money paid for the stock."

The jury returned a verdict for defendant, upon which judgment was entered.

It is the theory of appellant that, as appellee contracted for the stock and purchased the same and placed it in the name of his minor son, who lacked capacity to assent to any transfer, the father became liable for the assessment, even though the stock was paid for by funds of the son. On the other hand, it is the contention of the appellee that he never owned the stock, that it was paid for with the son's money, and consequently he (appellee) cannot be liable for the assessment.

In the face of the uncontroverted evidence that appellee contracted for the purchase of the stock and paid for it by debits to his account in the Merchants' & Planters' Bank of Clarendon, Ark., we are not called on to accept the jury's finding as one that at the time he purchased the stock he purchased it with the son's money. To do so would be to disregard the only evidence in the record—to accept as true what the record

shows is not true. The largest amount the son had on deposit in his own name in that bank at any time during the year 1920 was $214.19. With reference to payment for the ten shares purchased from B. Seelig, appellee testified: "The books show it was charged to my account." With reference to payment for the twenty shares purchased from Hugo Mundt he testified: "The $3,200 that was used to pay Mr. Mundt was paid in part by me, part by my wife's money, and in part with my son's money. I kept it all together, as well as I can remember and when the stock came to Clarendon, I was short and did not have enough to pay for it. It was paid out of my account. It was charged to my account. I think the money was all kept together at that time. At that time my wife's money, my money and the boy's money was all kept together."

The overdraft created in defendant's account by the $3,200 payment to Mundt was subsequently made good by appellee, according to his testimony, out of funds the son had on deposit in a St. Louis bank. Appellee testifies that the funds of the boy used to pay for the stock came from presents of money to the boy from his grandfather, his aunts and uncles, that the boy had an account in St. Louis—where or in what bank is not shown—and that appellee drew this and paid the overdraft created when the owners of the stock drew on him for the amount of the purchases. Appellee seems to have kept the dividends and handled the boy's account exactly as if the funds had been his own.

There can be no question that appellee, Ike Bondi, and not his son, was the intended party to the contracts of purchase. He himself testified: "I handled the transaction for 10 shares issued in the name of my son from Mr. Seelig. * * * I contracted for it and had it issued in the boy's name, and it came out to Clarendon and was delivered and I signed for it." With reference to the twenty shares purchased from Hugo Mundt, Mundt testified: "I sold it to Ike Bondi." In each instance the stock was indorsed in blank by the seller, and it was at appellee's direction that the new certificates were issued in his son's name. So far as either the seller or the bank was concerned, defendant had acquired complete dominion over the stock, to place it in whose ever name he should direct.

■■ We are justified under this record in accepting the verdict of the jury as a finding that the son paid for the stock in the sense that his father reimbursed himself out of

funds of the son for the amounts he paid for the stock. Under these circumstances was appellee liable for the assessment?

The son never became a stockholder liable to the assessment. He was not in law capable of giving assent to a purchase of the same for him. He did not have contractual capacity. His nonliability is the same whether the stock was given him or purchased with his money. He could ratify the contract of course when he became of age, but until that time it was not binding on him.

The National Bank Act, Rev. St. § 5151 (12 USCA § 63) contemplates that on every share of stock held in a national bank some one shall be legally liable for assessment. Where stock is held in the name of an infant, this person will normally be his transferror, since as regards the liability for assessment the transfer necessarily remained incomplete. Thus, where a father in his own name and with his own funds buys stock in a national bank, intending to make a gift of the same to his infant child, and does make such gift by having new certificates issued in the name of the child, the father's liability to assessment is clear, for in such case the father is the transferror.

The leading case relied on by appellant is a rather recent one, Early, Receiver, v. Richardson, 280 U. S. 496, 497, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658. In that case the Supreme Court answered the request of the Circuit Court of Appeals of the Fourth Circuit for instructions in the following question: "Is one, who purchases shares of stock of a national bank, liable for an assessment subsequently imposed by the Comptroller of the Currency upon the stock for the benefit of the creditors of the bank after the insolvency thereof, when it appears that the purchaser bought the stock from the registered holder thereof and received a certificate therefor endorsed in blank by the holder, with intent at the time of such purchase and delivery of giving the stock to his minor child, but without knowledge at that time of the failing condition of the bank, or intent to avoid the stockholder's liability, and when, after the acceptance of the endorsed certificate from the seller, and before the insolvency, the purchaser with like knowledge and intent, promptly presents the certificate to the bank, causes the shares to be registered and a new certificate to be issued in the child's name?"

In this case Richardson bought the stock and had the certificates indorsed in blank by the seller. Under his instructions three new certificates were issued to his minor children, and the certificates were retained in the custody of the bank. He intended to buy the stock for these children, and carried out that intention. The Supreme Court held he was not relieved from the assessments. We quote from the opinion:

"When Richardson bought the stock and received the certificates therefor, indorsed by the seller, title passed, and the transfer was complete as between the parties. Johnston v. Laflin, 103 U. S. 800, 804, 26 L. Ed. 532. Thereupon, as between seller and purchaser, the purchaser alone became liable for any assessment thereafter imposed; for, as between them, it would be in disregard of all equitable principles to continue against the seller the burdens of ownership after the purchaser had become entitled to all the benefits, including the receipt of dividends. * * *

"That the actual owner of the stock may be held for the assessment, although his name does not appear upon the transfer books of the bank, is well settled. Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 167, 168, 27 S. Ct. 179, 51 L. Ed. 423. * * *

"The real question is whether the intent of Richardson to buy the stock for his minor children, and the fact that by his direction the transfer was made to them upon the books of the bank and certificates issued in their names, had the effect of relieving Richardson from liability. We think not, since the transferees, being minors, were without legal capacity to assume the obligation. Upon coming of age they would have an election either to affirm or avoid the entire transaction. In the meantime, the transfer of the stock having resulted to their disadvantage, the law will avoid it for them, thus leaving the liability of Richardson for assessments unaffected."

It is very clear under the doctrine of this case that the parties selling the stock to appellee would not be liable for the assessment. The minor child was not liable. If appellee is not liable, no one is, and the law has successfully been circumvented.

How stands the matter as to him?

In Foster v. Chase et al. (C. C.) 75 F. 797, District Judge Wheeler points out very clearly the law as to the liability for assessments where parties place stock in national banks in the names of minor children. We quote therefrom: "In buying and paying for this stock, and having it placed on the books of the bank, the defendant acted for himself; in having it placed there in the names of his children, as with their assent,

518

he assumed to act for them. As they could not themselves so assent as to be bound to the liabilities of a shareholder, they could not so authorize him to assent for them as to bind them. To the extent that they could not be bound he acted without legal authority, and bound only himself."

In Aldrich v. Bingham (D. C., W. D. N. Y.) 131 F. 363, 364, which was a case involving an assessment on stock in a national bank which had been transferred to the stockholder's infant children, the court says: "It is a well-established rule of law that a transfer of stock in a corporation must be made to a person or corporation not only legally capable of holding the stock transferred, but also to one who is legally bound to respond when assessments are made upon the stock, and who may lawfully assume the liabilities of the transferror in relation thereto. It need not necessarily have been transferred to a person who is responsible in the sense that he will be able to financially meet the liabilities imposed upon a stockholder, but it is essential that he shall be legally liable to assume such obligations, and not be at liberty to repudiate them. * * * In view, moreover, of the tender age of the transferees, it may be presumed that the defendant received and accepted the dividend checks made payable by the bank to the order of his children. Hence his status is that of a shareholder in the national bank with such responsibilities as the law imposes in such case."

The subject is also considered in Cook on Corporations (6th Ed.) vol. 1, c. 250, where it is said: "A person buying stock in a national bank in the names of his minor children himself becomes liable to assessment as a stockholder, for minors are incapable of assenting to become stockholders so as to bind themselves to the liabilities thereof."

While in Early, Receiver, v. Richardson, and Aldrich v. Bingham, supra, the father was himself clearly the transferror, by way of gift, yet in Foster v. Chase, supra, and in Foster v. Wilson (C. C.) 75 F. 797, it appeared only that the father had "bought stock in the names of his minor children." In all four cases the significant fact, we think, was that the father was the real "purchaser" who had bought the stock, and who as between himself and the original seller should bear the liability to assessment. In all of them the original seller had sold the stock to one competent to relieve him of liability thereon, and, minus fraud in the transaction, he should be so relieved. To have held the father not liable would have been either to hold that no one was liable, a result clearly

not contemplated by the National Banking Act, or to hold that as between the father and the original seller liability should remain in the original seller, a clearly inequitable result. This, we think, is the real basis of the above decisions. Is a different result required in the present case where, just as in Early, Receiver, v. Richardson, supra, the father both "purchased" the stock and accepted delivery of the same indorsed in blank, simply because a part of the funds used in the purchase may have belonged to the son and the father was subsequently reimbursed in full?

In purchasing the stock, appellee acted either for himself, as agent of his son, or as trustee for him. If as agent, he acted for a principal both legally incompetent and presumably undisclosed, and therefore was a party to the contract of purchase exactly as though he had acted for himself. See Joseph T. Ryerson & Son v. Shaw et al., 277 Ill. 524, 115 N. E. 650, 653; Willow Springs Brewing Co. v. Newcomb, 92 Neb. 682, 139 N. W. 224, 225; Codding v. Munson, 52 Neb. 580, 72 N. W. 846, 847, 66 Am. St. Rep. 524; New London Ship & Engine Co. v. Simpson et al., 254 Mass. 76, 149 N. E. 670; 2 Corpus Juris, 808, 809, 816, 840; 22 Cyclopedia of Law and Procedure, 584; 21 Ruling Case Law, 895.

Counsel for appellee, doubtless realizing the legal difficulties of his client's position, argues that he was in fact a trustee, and hence not liable under section 5152 (12 US. CA § 66), which provides: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

This question does not seem to have been raised on the trial, and is presented here for the first time. If in buying the stock of the bank appellee acted as trustee for his son, he acted pursuant to powers that nowhere appear in the record, and he failed to disclose to the seller that such was the situation. In fact, he asserted its nonexistence by having the new certificates issued in the name of the son. If he in fact so acted, he was still acting as agent of an undisclosed principal, viz., the trust, and was thus himself still a party to the contract of purchase.

It is true that no particular form of

words is necessary to create a trust, provided "there be reasonable certainty as to the property, the objects, and the beneficiaries." Chicago, M. & St. P. Ry. Co. v. Des Moines Union Railway Co. et al., 254 U. S. 196, 41 S. Ct. 81, 86, 65 L. Ed. 219. And such trust may be established by clear and convincing parol evidence. Allen & Another v. Withrow & Another, 110 U. S. 119, 3 S. Ct. 517, 28 L. Ed. 90. The statute refers to persons holding stock as trustees. Appellee was not holding the stock, and disclaims any such theory. In all the cases in which Revised Statutes, § 5152 (12 USCA § 66), has been held applicable, the stock was expressly held in the name of the party against whom liability was asserted as trustee.

In Lucas v. Coe (C. C., N. D. N. Y.) 86 F. 972, it is held by the court that a trustee, even if not appointed by will or an order of court, is not personally liable for assessments against stock of an insolvent national bank owned by the cestui que trust but standing in his name. However, in that case the original certificate ran to "E. Emmons Coe as trustee" for "E. Emmons Coe Hamlin," and, when the new certificate of stock was issued, it was issued to the defendant as trustee.

In Fowler v. Gowing (C. C. A. 2) 165 F. 891, 892, the court held that the father who invested funds belonging to his children in bank stock taken in his name as trustee could not be held personally liable for an assessment thereon, the court saying: "We adopt the conclusion of Judge Coxe in Lucas v. Coe (C. C.) 86 F. 972, that this section is not confined to express trusts under deeds, wills, or orders of the court, but extends to every one holding stock in a national bank as trustee."

In McNair v. Darragh (C. C. A. 8) 31 F. (2d) 906, 907, this court held Rev. St. § 5152 (12 USCA § 66), to be applicable to the following set of facts:

"Separate trusts were created in favor of two minor children of appellee in 1919 and 1921, respectively. Until January 2, 1924, the property in each of those two trusts consisted of various deposits of money in banks in the name of appellee, as trustee, for the particular child—such moneys having been derived from appellee and other persons. On January 2, 1924, appellee gave to each of said children 75 shares of the capital stock of the bank which stock was then his property and stood in his name upon the books of the bank. These gifts were to himself as trustee with the intention of having the stock constitute additional property of the then existing trusts. No reservation of title or of disposition was retained by appellee and the gifts became as to him, irrevocable and parts of the trust estates. Upon the day following, the certificates of stock, representing these shares, were delivered to the bank and new certificates issued in place thereof. One of these certificates, for 75 shares, was issued to 'F. K. Darragh as trustee for T. E. Darragh'; the other, for seventy-five shares, to 'F. K. Darragh as trustee for Louisa Darragh.' The transfer of said stock was made in good faith and without any knowledge or reason to believe that said bank was insolvent or in a failing condition. From the transfer of the above stock, until the failure of the bank, all dividends received thereon were credited to the account and used for the benefit of the two children, respectively, in purchasing building and loan stock as property of the two trust estates."

In each of the above cases the stock itself was issued to defendant as trustee. It was likewise as trustee that he bought the stock. While it is true, as held by the court in Lucas v. Coe and Fowler v. Gowing, supra, that a trust may be created in other ways than by will or deed or court order, yet, however created, there must be clear evidence of its creation. We are not at liberty to presume essential facts simply in order to relieve a party under Rev. St. § 5152 (12 USCA § 66), of a liability for which otherwise he seems the logical and proper candidate. In the cases cited there was a definite trust estate both before and after the investment in bank stock, legally capable of incurring the liabilities inherent therein; this trust estate was known to all the parties as the purchaser of the stock, and the transferror (the trustee himself, in his individual capacity) assumed the risk inherent in transferring to an entity perhaps factually, though not legally, less responsible than himself. In the case at bar, on the other hand, there is not a shred of evidence of the creation of such a trust estate, either before or after the investment in the stock; the transferror sold with reference to the competence of appellee and none other to relieve him of the liability inherent in the stock. Appellee in fact asserted the nonexistence of such a trust by having the new certificates issued in the name of the son. We have already pointed out that such a resulting trust as may have arisen from the use of funds belonging to the son, as yet undeclared, is not such an entity as to fall within the contemplation of Rev. St. § 5152 (12 USCA § 66). A result-

ing trust is a device of equity to enforce restitution for wrongdoing, and not a shield behind which the wrongdoer can hide from liabilities otherwise incurred. We do not mean to assert that appellee is a wrongdoer, but he cannot be allowed in accordance with what would now be to his advantage to set up an otherwise unthought of trust. Had he chosen to recognize in the form of a trust the obligation arising out of his use of his son's money, he would have had the new certificates issued in his own name as trustee for his son; instead, he chose to recognize the obligation by having the new certificates issued in the son's name, and must therefore be held to the consequences that attach to buying stock of a national bank on behalf of a minor without the intervention of a trust estate to protect the purchaser from the liability acquired from the seller and which he cannot pass on to the minor.

This trust argument was made in Early, Receiver, v. Richardson, supra, and was thus answered by the Supreme Court at page 500 of 280 U. S., 50 S. Ct. 176, 177: "There is no merit in the point, made in argument, that Richardson was a trustee for the minors, even if that would enable him to avoid personal liability, Johnson v. Laflin, 5 Dill. 65, 82, Fed. Cas. No. 7,393; and there is nothing certified by the court below which furnishes a basis for the suggestion. Richardson, having bought with his own money, became the owner of the stock. And although the purchase was made with the intent of giving the stock to his children, non constat that he would not change his mind, as he was perfectly free to do. The new certificates simply were issued and registered in the names of the children, and this, if effective, would have resulted only in consummating an ordinary gift. It no more created a trust than if the donees had been persons sui juris."

Appellee lays emphasis on the words "having bought with his own money," contained in the above excerpt. But the use of appellee's own money in the purchase was but one factor precluding the existence of a trust, and there is no necessary implication that, had he not used his own money, a trust within the contemplation of Rev. St. § 5152 (12 USCA § 66), would necessarily have arisen. In this connection we call attention to the statement in Hubbell v. Houghton (C. C., D. Mass.) 86 F. 547 at page 552 (affirmed Houghton v. Hubbell (C. C. A. 1) 91 F. 453) to the effect that, "if we were compelled to consider the proposition, we should probably hold that the statute [R. S. § 5152], so

far as it relates to the status of stock held in trust, concerns only express and active trusts, where there is a probability of some estate to respond to the liability. * * * " The latter part of this statement is somewhat inconsistent with a statement contained in Lucas v. Coe, supra. Nevertheless, the court there clearly recognizes that only certain specifically defined or definable trusts fall within the contemplation of Rev. St. § 5152 (12 USCA § 66). We think this must be true. Furthermore, such use as appellee in the case at bar made of his son's funds to finance the original purchase was fully as consistent with an agency as with a trust. In light of the further fact that the stock was never placed in appellee's name as trustee, it is as true here as it was in Early, Receiver, v. Richardson, supra, that there is nothing in the record "which furnishes a basis for the suggestion" of a trust estate that could have held the stock within the contemplation of Rev. St. § 5152 (12 USCA § 66).

Further cases that bear somewhat upon the case at bar are Horton v. Mercer, Receiver (C. C. A. 8) 71 F. 153; Williams v. Cobb (C. C. A. 2) 219 F. 663, affirmed Williams v. Cobb, 242 U. S. 307, 37 S. Ct. 115, 61 L. Ed. 325; and Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 493.

If appellee can escape liability here, then the avoidance of the rule of Early, Receiver, v. Richardson, supra, is made easy, and escape from assessments on national bank stock presents little difficulty. We are not here dealing with the possible liability that may arise out of a transfer to even a legally competent transferee, and clearly as between the transferror and his transferee, the appellee, the latter is the one who in all justice should bear the liability.

The present case is made stronger by the fact, already brought out, that the finding of the jury must be taken to mean merely that Solomon Bondi eventually paid for all the stock placed in his name. In very considerable measure the stock was actually purchased with the money and credit of the appellee, Ike Bondi, himself, and there was no evidence whatsoever of the precise extent of the interest of Solomon Bondi in his father's account at the time it was debited for the purchase price of the stock. Under such circumstances, the only possible distinction that can be drawn between the present case and Early, Receiver, v. Richardson, supra, is both unreal and unsubstantial. We think the court erred in giving the instruction excepted to. The judgment is reversed, and the case is

remanded for further proceedings in harmony with this opinion.

Reversed and remanded.