## CULLEN v. CHAPPELL.
### No. 95.

Circuit Court of Appeals, Second Circuit.
Jan. 6, 1941.

William W. Hoppin, Jr., and Anson T. McCook, both of Hartford, Conn., for Harriet Cullen.

Griswold Morgan, of New London, Conn., and Herbert S. MacDonald and John H. Weir, both of New Haven, Conn., for Katherine Chappell.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is a daughter by his first marriage of Dr. George Cullen who died in Louisiana in 1937 and the appellee, who will sometimes be referred to as Harriet, is his second wife and surviving widow. The appeal brings up for review the correctness of a decision of the trial court that the appellant made a voluntary declaration of a valid trust under which she holds as trustee for the widow a portion of the proceeds of an insurance policy on the life of her father paid to her as the beneficiary under the policy. Jurisdiction on the ground of diversity is clear and unquestioned.

What occurred to bring about the creation of the alleged trust is not in dispute but, as so often happens where it has to be determined whether a voluntary trust is executed or still executory, there is a serious, and not easily resolved, dispute as to the effect of what was done.

Soon after Dr. Cullen died, a Mr. Moss, an intimate friend of his who had been present at his death, wrote a letter to the appellant, who lived in New London, Conn., in which he recounted the manner of her father's rather sudden death from a heart attack and said, "You will recall when I talked with you over the telephone, I told you I had a personal message to you from your Father. Just before he passed away he told me that he had a $10,000 policy with the Equitable Life of Iowa, upon which there was a small loan and he ask(ed) that I tell you that his last wishes were that you give to Harriet $5,000.00 of the proceeds of this Policy contract".

The appellant replied to the quoted part of the letter as follows:

"Did Harriet tell you in what form she wanted her $5,000. By that I mean in a lump sum or monthly payments. * * * My reason for asking is that I cannot have money paid directly to her and must know the arrangement. Since she has some other income the only sensible thing seems to have monthly payments over a 20-year period—that protects her and her interest rate is higher than in a bank or government bonds, the only other places it would seem safe to invest and I'd rather bet on an insurance company myself. From the $5,000 she would receive $27.55 a month, with possible semi-annual extras. Harriet at one time had quite a good income from Dr. Hume's Estate. Due to financial changes this has been greatly reduced and since we never know when there will be another upheaval it seems wisest to trust to an insurance company and I wouldn't want to see her left without income in case of another crash". This letter was followed by another to Mr. Moss in which the appellant said on the same subject: "I have filed my claim with The Equitable asking that $5,000 be paid over a ten-year period. I have yet to hear what that will amount to monthly but I imagine around $50. I have never had the policy so there may be some delay in settlement but not a great deal. I am glad Harriet decided on monthly payments—it seems to me to be by far the safest thing to do. * * * Incidentally, there is no legal way I can have the monthly checks to Harriet made payable to her. It will be necessary for me to forward them".

The appellant, in accordance with an option in the policy under which she elected as the named beneficiary to have payment made, received $100 in cash; had the insurance company hold one fund of $5,000 from which she was to be paid $49 monthly over a period of ten years with any remainder paid to her husband; and had the company hold another fund of about $3,500 under an arrangement making that payable to her husband. The appellant reserved the right as to both funds held by the company to have the remainder of each with accumulated interest payable in full to her upon demand.

The insurance company has made the monthly payments to the appellant as agreed and they have all been deposited in a joint checking account of herself and her husband. She sent to the appellee three of her own checks on this account, each for the amount of a monthly payment made to her by the insurance company, but then stopped doing that and has sent none since February 1, 1938; having refused to continue to do so apparently because she learned that the appellee, as the beneficiary, had received the proceeds of another insurance policy for $10,000 on the life of Dr. Cullen.

The appellee brought a bill in equity in the District Court for the District of Connecticut to enforce the alleged trust and from a decree requiring the appellant to pay over the $5,000, less the three payments already made, the appellant has appealed.

As the appellant acted simply as a volunteer without any consideration whatever to support an executory promise, the decisive question is whether she did enough to charge herself as a trustee under an executed declaration of trust. Although she might have done that without expressly saying so, as her intent to do it might be implied from any language sufficient to make it clear, Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138, an intent to create a trust not actually accompanied by steps which brought it into existence would not be enough to charge her as a voluntary trustee. Landon v. Hutton, 50 N.J.Eq. 500, 25 A. 953. But courts will not complete an imperfect gift or enforce a bare promise to give; and to guard against the danger of so doing under the guise of enforcing a trust it is required of one seeking to have such a status judicially recognized that it be proved clearly and convincingly. If what has been done falls short of showing the complete establishment of a fiduciary relationship, as where the intent to become a trustee is doubtful because what was said or done is as compatible with an intent to make a future gift as with an intent to hold the legal title to property for the exclusive benefit of another, the proof fails to show more than a promise without consideration, either good or valuable, to turn it into a valid contract. Allen v. Withrow, 110 U.S. 119, 3 S.Ct. 517, 28 L.Ed. 90; Eschen v. Steers, 8 Cir., 10 F.2d 739. Once the trust has been completely set up, however, lack of consideration is of no moment and the trustee is bound to perform. Connecticut River Savings Bank v. Albee, 64 Vt. 571, 25 A. 487, 33 Am.St.Rep. 944.

■ The first letter of the appellant to Moss in reply to his statement of her father's last request to have $5,000 of the policy proceeds paid to his widow indicated an intent to comply but was merely a request for information as to how the widow wished to have that done. It created no contract obligation and certainly no fiduciary relationship. It is true that the appellant referred to what she then clearly intended that the widow should have as "her $5,000" but it is equally clear that nothing had then been done to make the money hers. At that time the appellant had only her claim against the insurance company and the res now claimed to be the corpus of the alleged trust had no existence. See Sec. 75, Restatement of Trusts; Organized Charities Association v. Mansfield, 82 Conn. 504, 74 A. 781, 135 Am.St. Rep. 285. There is no evidence of an intent ever to make her claim against the insurance company as the beneficiary named in the policy the subject matter of any trust nor did she ever do anything to that end. Moreover, there was no proposal in the letter which could be accepted by the widow to make a valid contract to create any trust for there was no consideration and nothing which could be more than a promise to give the widow "her $5,000" either in a lump sum or in installments.

It may be fairly inferred that when the appellant learned that the widow desired to have payments made over a ten-year period she intended to make an arrangement with the insurance company to have it hold the fund and disburse it to the widow in that way. But her intent was not carried into effect for the reason, apparently, that the company refused to hold for, and pay to, any one but the beneficiary named in the policy. Thereupon the appellant had the fund made payable to herself over a ten-year period with the right to be paid any balance on demand. While the relationship thus created between the insurance company and the appellant may have been a fiduciary one, this record fails to show that it was other than that of debtor and creditor and when it had been created all the appellant had done was to make financial arrangements which would put her in possession of funds from time to time in the future to enable her to perform her promise to pay the widow the monthly installments. There was no promise to do more than that and nothing done

to accomplish more. The appellant, moreover, was not unequivocally shown to have made the settlement with the insurance company merely to aid in fulfilling her promise to make payments to the widow as the trial court found that before she had learned of her father's desire to have the widow get $5,000 from the proceeds of the policy she had been considering having the proceeds paid to her in definite installments over a period of years. Her reference in her letter to the desirability of relying upon the obligation of an insurance company instead of making investments of her own indicates that she intended to have the fund so administered for the widow if the widow elected to have that done. But intent alone was not enough to create a trust. Eschen v. Steers, supra; Organized Charities Association v. Mansfield, supra; Elliott v. Gordon, 10 Cir., 70 F.2d 9. And no trust of that nature was ever created.

Having, instead, arranged to have the installments paid by the insurance company to her, the appellant in her last letter to Moss did promise to send the checks to the widow in the form of a statement that as there was no legal way to have the monthly checks made payable to Harriet, "It will be necessary for me to forward them". This was a notice of her failure to charge herself or any one else with any obligation to make the $5,000 presently payable to the widow and certainly created no trust of that nature. What it does show is a then present intent to forward the checks of the insurance company to the appellee as they were received in the future. That she never did exactly that but deposited them in her checking account and for the first three payments sent her own checks to the appellant shows that she changed her mind about the method in which she would pay the monthly installments to the widow. It was not an acknowledgment by action of her receipt of the checks themselves in trust for the appellee as she treated them as her own and the checks she did send the widow were payable out of the joint checking account from her own funds.

The appellant had at no time any fund of $5,000 from the proceeds of the policy which could be the res she could hold in trust for the widow. The most she ever had was a contract binding the insurance company to pay her in installments. Nor were any such installment payments in ex-

istence when she last wrote Mr. Moss. What she wrote can be construed only as a promise to forward to the widow in the future presently nonexistent payments to be made by the insurance company in the future in accordance with its contract of settlement of its obligations to her as the beneficiary named in its matured policy.

She did, indeed, promise to make a series of payments which were to be gifts from the proceeds of the policy when she received the payments but that fell short of a declaration creating herself a trustee of any definite existing personal property.

Decree reversed.

CLARK, Circuit Judge (dissenting).

Without doubt defendant could make herself trustee of the insurance company's obligation; the real question is as to her intent. This the state court holds "a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made." Meriden Trust & Safe Deposit Co. v. Miller, 88 Conn. 157, 162, 90 A. 228; Burbank v. Stevens, 104 Conn. 17, 131 A. 742; cf. also Federal Rule 52(a), 28 U.S.C.A. following section 723c. I think we should respect the trial court's finding; it seems to me wholly reasonable on the evidence.

The intent that Harriet should have "her money" in accordance with the insured's desires is clearly disclosed in defendant's first letter. At that time defendant has not taken the necessary steps to carry out that intent, since, as she says, she does not have the policy and cannot act until she gets it. When she writes her second letter she has, however, duly filed her claim with the company. That is, she has done what is necessary to fix the res. But has her intent changed? On the contrary, she refers to the "monthly payments" which "Harriet decided on" and "the monthly checks to Harriet"; because there is no legal way of direct payment, "it will be necessary for me to forward them"; and "if Harriet is still with you will you tell her of insurance arrangements?" The supposed legal difficulty, however, would not make necessary the forwarding of the checks unless they were Harriet's.

I suspect any doubt as to the inference thus indicated comes back to a rather natural suspicion that defendant was not making full disclosure of her plans when she wrote her father's old friend, and that the form which the insurance company's obligation took was perhaps more a result of her desire to maintain control over it than of a need to avoid not immediately obvious legal difficulties. But I think the complete answer to this is that her relationship with the insurance company—her intent while dealing with it—was peculiarly a matter within her knowledge and was probably fully disclosed in her correspondence with the company. Since she did not offer evidence as to this at the trial, the judge could well take her statement of the reason for the arrangement at its face value.

Perhaps technically the judgment below should have been a declaration of defendant's obligation to make monthly payments to plaintiff for ten years, with an order for adequate security for such payments. But a lump-sum settlement of what would be a vexing continuous obligation seems not inappropriate; at any rate, this feature of the judgment was not objected to. I would affirm.