**BALDWIN et al. v. FLECK et al.**

**No. 11479.**

Court of Civil Appeals of Texas. Galveston.

Jan. 28, 1943.

Rehearing Denied Feb. 17, 1943.

Leon M. Payne, Harry R. Jones, and Andrews, Kelley, Kurth & Campbell, all of Houston, for appellants.

M. G. Fakes, Jesse J. Lee, and H. E. Bell, all of Houston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellees, Mrs. Minnie Lee Fleck et al., as three separate suits, to recover from appellants, Robert B. Baldwin and James C. Baldwin et al., the title to and possession of three savings accounts which had been opened by Mrs. J. C. Baldwin, deceased, during her lifetime, and for certain Building & Loan Company stocks and certificates which Mrs. Baldwin had purchased before her death under alleged gifts and declarations of trust from Mrs. Baldwin. The three cases were consolidated and upon trial before the court without a jury judgment was rendered in favor of appellees for recovery of all such stocks and accounts sued for. Appellants have duly appealed from this judgment.

At the request of appellants, the trial court prepared and caused to be filed his findings of fact and conclusions of law. Appellants excepted to said findings and conclusions on the alleged grounds that the evidence on which they were based was legally insufficient to support them, and for the alleged reason that the undisputed facts on which they were based failed to establish either an intention to make a completed gift of such stocks or to create a trust as to any of such savings accounts.

The appellees herein, Mrs. Minnie Lee Fleck and husband, L. J. Fleck, Annie Belle Lomax, William Thomson, Fannie Thomson and husband, June C. Thomson, Annie

May Burkart and husband, C. A. Burkart, Charlie Louis Burkart, Billie Russell Burkart, and Mrs. Cora Winn, are the brothers and sisters and collateral kindred of Mrs. Baldwin.

Mrs. Fleck, Annie Belle Lomax, and Mrs. Cora Winn are her sisters. William Thomson and June C. Thomson (non compos mentis) are her brothers, and Fannie Thomson is the wife of June C. Thomson. Annie May Burkart is a niece of Mrs. Baldwin, and Charlie L. Burkart and Billie R. Burkart are Mrs. Burkart's minor sons. The ages of Mrs. Baldwin's brothers and sisters range from 62 to 79 years. At the time of the trial no one of them had property exceeding the value of $2,000, and Mrs. Fleck and Mrs. Lomax had been receiving State aid for a period of at least two years.

Appellants, James C. Baldwin and Robert B. Baldwin, were the grandsons of Mrs. J. C. Baldwin. They are her sole heirs and were sued herein individually and as administrators of Mrs. Baldwin's estate. The South Texas Commercial National Bank of Houston, Union National Bank of Houston, Liberty Loan & Building Association, and Gibraltar Savings & Building Association were named as parties defendant. They are nominal appellees in this court.

Mrs. J. C. Baldwin died intestate in Harris County on June 15, 1941. Her estate, including the stocks and accounts involved herein was valued at that time at $378,778.62. Administration proceedings upon her estate were duly instituted in the county court of Harris County and James C. Baldwin and Robert B. Baldwin, appellants herein, were appointed and qualified as administrators of the estate.

It was stipulated that on April 16, 1928, Mrs. Baldwin wrote in her own handwriting the following instrument:
"April 16, 1928.
"To Whom It May Concern:

"I, Mrs. J. C. Baldwin wills & decrees all her property known as Baker Addition & Rummell's Addition in the 4th Ward in the City of Houston with all improvements & appurtainces to my daughter-in-law Myrta Lynch Baldwin, to have & to hold & dispose of as she sees best. I also leave her in charge of a trust fund for my five Bros. & Sisters, to wit Cora Winn, Annie Lomax, Minnie Fleck, William A. Thomson and June C. Thomson, also Annie May Burkhart; $5000.00 each making $30,000.00 Thirty Thousand Dollars. This money is to be placed in Banks & only the interest drawn for each one, annually shall be paid, Each one to receive the interest only from $5000.00 each which will be $200.00 per year to spend as they see fit. The $30,000.00 so placed is to revert back to my estate at the death of any of the beneficiaries so named in this will & only the interest of $5000.00 is to go to each one so long as they live; signed & witnessed, Hattie O. Baldwin by my grandson, J. C. Baldwin— J. C. Baldwin—Age 13."

This instrument was revoked by a will written by Mrs. Baldwin in the fall of 1929, unless it was revoked prior thereto in some manner unknown to the parties.

On December 8, 1928, Mrs. Baldwin opened two savings accounts in the South Texas Commercial National Bank of Houston, No. 25830 in the name of "Mrs. J. C. Baldwin in trust for Mrs. Annie Bell Lomax", and No. 25831 in the name of "Mrs. J. C. Baldwin in trust for Mrs. Cora Winn." On that date she deposited $5,000 out of her own funds in each of these accounts. She personally handled the details of these transactions, the signature cards being in her own handwriting. She thereafter made withdrawals from the accounts. She used the sums withdrawn from the accounts "for her own purposes."

On December 10, 1928, Mrs. Baldwin opened account No. 60202 in the Union National Bank of Houston in the name of "Mrs. J. C. Baldwin in trust for Mrs. L. J. Fleck." No additional deposits were made to this account and no sums were withdrawn therefrom.

Mrs. Baldwin retained exclusive possession of the passbooks issued by the banks on each of these accounts and neither Mrs. Lomax, Mrs. Fleck or Mrs. Winn had any knowledge of the existence of the accounts until after Mrs. Baldwin's death. From time to time she presented these passbooks to the banks for the entry and posting of interest due thereon and for withdrawals from and additional deposits therein. At the time of her death the amounts in these accounts were as follows:

| | |
|---|---|
| Account No. 25830, | $5146.79 |
| Account No. 25831, | $5148.18 |
| Account No. 60202, | $6506.74 |

The Building & Loan shares and certificates involved herein were purchased by Mrs. Baldwin from the Gibraltar Building & Loan Association of Houston and from

the Liberty Building & Loan Association. She made the following stock purchases from these two associations:

As in the case of the opening of the savings accounts above referred to, Mrs. Baldwin retained exclusive possession of

From Gibraltar:

| Certificate Number | Date Issued | Number Shares | Acc't. Number | Name in which Issued | Consideration Paid. |
|---|---|---|---|---|---|
| AA 384 | 2/10/36 | 9 | 05976 | Mrs. J. C. Baldwin, Trustee for Annie Bell Lomax | $ 900.00 |
| AA 385 | 2/10/36 | 12 | 05977 | Annie May Burkhart by Mrs. J. C. Baldwin, trustee | 1200.00 |
| AA 386 | 2/10/36 | 11 | 05978 | Mrs. J. .C. Baldwin, Trustee for Wm. A. Thomson | 1100.00 |
| AA 508 | 7/1/36 | 12 | 06053 | Mrs. Hattie O. Baldwin | 1200.00 |
| AA 544 | 7/16/36 | 15 | 06053 | Mrs. Hattie O. Baldwin | 1500.00 |
| AA 557 | 8/4/36 | 15 | 06073 | Mrs. J. C. Baldwin, trustee for June C. Thomson | 1500.00 |
| AA 626 | 12/3/36 | 15 | 06053 | Mrs. Hattie O. Baldwin | 1500.00 |
| AA 695 | 1/11/37 | 20 | 06144 | Mrs. J. C. Baldwin, trustee for Fannie Nixon | 2000.00 |
| AA 770 | 3/1/37 | 35 | 06187 | Annie Laurie Thomson by Mrs. J. C. Baldwin, Trustee | 3500.00 |
| AA 791 | 4/1/37 | 25 | 06200 | Mrs. J. C. Baldwin | 2500.00 |
| AA 931 | 7/6/37 | 35 | 06270 | Mrs. Minnie Lee Fleck by Mrs. J. C. Baldwin, Trustee | 3500.00 |
| AA 1199 | 1/3/38 | 10 | 05976 | Mrs. J. C. Baldwin, Trustee for Annie Bell Lomax | 1000.00 |
| AA 1200 | 1/3/38 | 3 | 05978 | Mrs. J. C. Baldwin Trustee for Wm. A. Thompson | 300.00 |
| AA 1476 | 7/2/38 | 2 | 06533 | Mrs. J. C. Baldwin, Trustee for J. C. Thompson and wife, Fannie Thompson | 700.00 |

From Liberty:

| Certificate Number | Date Issued | Number Shares | Name in which Issued | Consideration Paid. |
|---|---|---|---|---|
| 2288 | 9/19/40 | 50 | Mrs. Jacob C. Baldwin | $5000.00 |
| 2291 | 9/30/40 | 50 | Mrs. Annie Lomax by Mrs. Jacob C. Baldwin Trustee, Houston, Texas. | 5000.00 |
| 2327 | 1/9/41 | 50 | Mrs. J. C. Baldwin, Trustee for Wm. A. Thompson, 2515 Mason St., Houston, Texas | 5000.00 |
| 2328 | 1/9/41 | 50 | Mrs. J. C. Baldwin, Trustee for J. C. Thomson and/or Fannie Thomson, Houston, Texas | 5000.00 |

She followed substantially the same procedure in purchasing and handling all of the above stock and paid for each of them with her personal funds. She executed a signature card in the nature of an application to purchase at the time of each purchase which conformed in all instances with the names in which the certificates were issued.

all of said Building & Loan certificates throughout her lifetime and none of the appellees had any knowledge of their existence until after her death. Each Association issued semi-annual dividend checks to the person in whose name the certificate was issued. Mrs. Baldwin endorsed these dividend checks in the name of the person to whom the certificate was issued, and

deposited them in all instances in her personal checking account.

The trial court found, in substance, that, at the time Mrs. Baldwin opened each of said savings accounts and purchased each of the stocks involved herein, she intended to give and did then give each of said accounts and stocks to one of the appellees herein and that she intended to then make, and did then make and declare herself in each instance to be trustee thereof for one of appellees. The court found that such transactions were in each and every instance "executed and completed trusts and equitable gifts", and upon such findings and conclusions he rendered judgment in favor of appellees. Appellants excepted generally to these findings and conclusions of the trial court on the ground that the evidence on which they were based was legally insufficient to support them.

In addition to the above stipulations and findings of fact there was testimony to the effect that, in a conversation with E. C. Barkley in 1940, Mrs. Baldwin had stated, in substance, that she felt that appellants had received ample funds from the estate of herself and her deceased husband; that the appellants had ample funds from Mr. Baldwin's estate and she thought that she had "been rather badly treated" in the law suit over her husband's will. There was also testimony that Mrs. Baldwin had stated that she was going to give appellee, Annie May Burkart a piece of property.

The sole question presented in the appeal is whether the evidence before the trial court was sufficient to support the court's findings that, at the time Mrs. Baldwin opened the savings accounts and purchased the stocks involved herein, she intended to and did then give said stocks and accounts to the person in whose name the accounts were opened and to the person in whose name said stock was purchased by herself as trustee, and that she then intended to make and did make herself trustee thereof for them.

■ In order to prevent property left by deceased persons from being fraudulently appropriated under claims of parol gifts, the law has established certain safeguards in regard to the enforcement of such gifts. They include an intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift in praesenti at the very time he undertakes to make the gift; and the irrevocable transfer of the present title, dominion and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it. It must appear that all of these elements have been clearly established before the gift can be sustained. Harmon v. Schmitz, Tex.Com.App., 39 S.W.2d 587; Allen-West Commission Co. v. Grumbles, 8 Cir., 129 F. 287.

■ The courts will not complete an imperfect gift or enforce a bare promise to give; and to guard against the danger of so doing, under the guise of enforcing a trust, it is required of one seeking to have such a status judicially recognized that it be proved clearly and convincingly. If what has been done falls short of showing the complete establishment of a fiduciary relationship, as where the intent to become a trustee is doubtful because what was said or done is as compatible with an intent to make a future gift as with an intent to hold the legal title to property for the exclusive benefit of another, the proof fails to show more than a promise without consideration, either good or valuable, to turn it into a valid contract. Cullen v. Chappell, 2 Cir., 116 F.2d 1017.

In its final analysis, the question here presented is whether the acts of Mrs. Baldwin in opening the accounts and purchasing the stocks involved herein in her name as trustee for appellees, when explained and considered in connection with the facts surrounding such transactions, are legally sufficient to establish that she intended to give such stocks and accounts to appellees, that she made a completed gift of them to appellees, and that she created a valid trust in their favor at the time she purchased and acquired them. Under the above authorities, we think that the evidence in this record falls short of establishing these essentials.

■ In the case of Peterson v. Weiner, Tex.Civ.App., 71 S.W.2d 544, 546, writ refused, under a fact situation similar in all material respects to that in the instant case, the San Antonio Court of Civil Appeals held that there could be no gift so long as the donor of the trust had dominion over it, with power to defeat the gift. In that case Joseph Eaton, during his lifetime, had given Weiner a typewritten receipt for a payment upon Weiner's vendor's lien note, which stated the balance due on the note and contained the endorsement, "in case of my death I want this debt cancelled." Later, Eaton delivered the note

to one Nathaniel Lowe and told him to take it and keep it and after his death to deliver it to Weiner. After Eaton's death Weiner sued his administrator to cancel the remaining balance due upon the note. The trial court had found that it was Eaton's intention to make a present gift of the note to Weiner and that the delivery of the note to Lowe with instructions to deliver it to Weiner after his death was a sufficient delivery to execute the gift. The appellate court in reversing the judgment of the trial court said:

"Viewing this case in the most favorable light to appellees, Joseph Eaton reserved a dominion over the subject-matter of this gift, and he retained in his power the possibility to defeat the gift entirely. To constitute a gift inter vivos there must not only be a donative intention, but also a complete stripping of the donor of all dominion or control over the thing given. [Citing authorities]

"A gift cannot be made to take effect in the future. Such a transaction would amount only to a promise or agreement to make a gift, and being without valuable consideration is void. 12 R.C.L., p. 930, § 9. * * *

"Regardless of this proposition, however, he undoubtedly had the right to collect and use the monthly installments and to this extent had dominion over the note, and only his death could defeat his perfect right to use both the principal and interest of the note. There could be no gift of any part of the note or the debt which the note represented, so long as Eaton had such dominion of the same and such power to defeat the entire gift. [Citing authorities]

"A person cannot retain the use and full enjoyment of his property during his lifetime and provide that at his death it shall go to some one other than his legal heirs, without making a will, executed under the forms and solemnities provided by the statutes on the subject of wills [Authorities cited]

"If it were possible for a person to retain the full enjoyment of his property during his lifetime and be able to dispose of it after his death by a transaction such as Eaton had with Lowe, it would not be necessary to execute a will in accordance with the statutes on the subject. Stevenson v. Earl, supra [65 N.J.Eq. 721, 55 A. 1091, 103 Am.St.Rep. 790, 1 Ann. Cas. 49]; * * *.

"The disposition which Eaton attempted to make of any balance that might remain unpaid at his death is testamentary in its nature and cannot be accomplished in the manner here undertaken. Carlton v. Cameron, 54 Tex. 72, 38 Am.Rep. 620."

█ Another case under a similar fact situation is the case of Chaison v. Chaison, Tex.Civ.App., 154 S.W.2d 961, 963, writ refused for want of merit on November 14, 1941. The reviewing court in its opinion said: "In order to constitute a gift of chattels inter vivos there must be a delivery of the possession of the chattels by the donor to the donee, or to a third person for his use and benefit, with the intention on the part of the donor to vest the ownership of the chattels in the donee, immediately and unconditionally. Garrett v. Hunt, Tex.Com.App., 283 S.W. 489. In the words of the authorities cited in Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, the word 'vest' means to give an immediate, fixed right of present or future enjoyment; a 'vested estate' is an interest clothed with a present, legal, and existing right of alienation. * * * Therefore, this stock passed under the terms of his will to his independent executrix, and not to his children under the trust agreement. On these conclusions, the judgment of the lower court on the issue of title to the property must be affirmed."

In the case of Benavides v. Laredo National Bank, Tex.Civ.App., 91 S.W.2d 372, 374, a father opened a savings account in the name of his infant son. He retained the passbook and later withdrew the entire amount of the account. The child had no notice or knowledge of the deposit until after his father's death. Upon learning of it, he sued the bank to recover the amount of the deposit. The court in its opinion said: "The evidence in this case is wholly wanting in two essentials to show a perfected gift in the lifetime of the parties under the principles above declared. There was no evidence showing delivery, or the equivalent thereof, and there was no evidence showing an acceptance by the plaintiff. A note to Snidow v. Brotherton, 40 A.L.R. 1249, deals with the delivery of a passbook to the donee as the equivalent of delivery sufficient to show a perfected gift. Many decisions hold that the delivery of a passbook with the intention of making a gift of the fund may be sufficient. The decisions are almost un-

animous that in the absence of such delivery of the passbook no perfected gift is shown. The authorities collated in the note to Peters' Adm'r. v. Peters, Ky., 59 A.L.R. 969, largely preponderate in showing that 'the attempt to uphold as a completed gift inter vivos a deposit of money in a bank in another's name without his knowledge until after the depositor's death or his attempted revocation of the same gift, has failed.'"

The above decisions by the courts of this State are, we think, controlling in this appeal. They establish that the evidence in this case falls short of affording a legal basis for a finding of an intention on the part of Mrs. Baldwin to give the stocks and accounts involved to appellees; they further establish that, whatever Mrs. Baldwin's intention may have been, no valid gift, legal or equitable, in fact occurred.

Decisions from other jurisdictions dealing with the title to savings accounts which had been opened in the depositor's name as trustee for another, with few exceptions, follows substantially the same line of reasoning adopted by our courts in the cases of Peterson v. Weiner, Chaison v. Chaison, and Benavides v. Laredo National Bank, above referred to, and hold that no presumption of a trust or gift arises from the opening of an account in the depositor's name as trustee for another.

In New Jersey—In the case of Nicklas v. Parker, 69 N.J.Eq. 743, 61 A. 267, affirmed, 71 N.J.Eq. 777, 71 A. 1135, 14 Ann. Cas. 921, it is held that the right of the person named in cestui que trust to have the fund on deposit must rest upon one of two theories: i.e., that it was a gift inter vivos by the depositor to her, or that it was a valid trust not enforceable by her. That in either event, the intention must be clearly proven and such intention must be shown to have been carried into effect by the donor or settlor. The court held in this case that in order to legalize such a gift, there must be not only a donative intention, but also in conjunction with it a complete stripping of the donor of all dominion or control over the thing given.

In Massachusetts—In the case of Hogarth-Swann v. Steele, 294 Mass. 396, 2 N.E.2d 446, 447, it is said: "The mere fact that a person puts money belonging to him in a savings bank account in his name as trustee for another does not create a valid trust. * * * Unless there is something more than the words that one is trustee for another, to show that a present creation of an equitable interest is intended and that the settlor has ceased to have full dominion, the nominal cestui has no rights."

In Missouri—In Frank v. Heimann, 302 Mo. 334, 258 S.W. 1000, wherein it is said that the treating of funds deposited at all times by defendant as his absolute individual property negatives the idea that by depositing moneys in bank in his own name as trustee he intended that they should thereby become his daughter's and not his.

In Minnesota—In the case of Walso v. Latterner, 140 Minn. 455, 168 N.W. 353, 354, it is said: "There are many cases where one person has deposited in a savings bank money to the credit of another, or 'in trust for' another. There is no question in this state, and little question in other jurisdictions at the present day, that such a deposit, where the bank book is retained by the depositor, is not a completed gift or a completed trust."

In the case at bar the record affirmatively shows that the moneys withdrawn by Mrs. Baldwin from the savings accounts and the dividend claimed by her from the stocks were deposited in her personal checking account and used by her personally.

Regardless of what her intentions may have been at the time she opened the accounts and purchased the stocks involved herein, the fact remains that for the balance of her life she exercised exclusive control over them, making withdrawals therefrom for personal purposes, using the dividends therefrom, and converting and selling the stocks. In view of these facts, regardless of what her intention may have been, there could have been no valid gift or trust as to such stocks, under above authorities.

Appellees rely largely upon the case of Cazallis v. Ingraham, 119 Me. 240, 110 A. 359, by the Supreme Court of the State of Maine, which holds that the opening of an account, standing alone, raises a rebuttable presumption of an intention to make a present equitable gift of the account and to make the depositor trustee of such account. This holding is, in direct conflict with the decisions of this State above referred to, and with the decisions from other jurisdictions dealing with the title to savings accounts.

It follows that the judgment of the trial court must be in all things reversed and judgment here rendered that appellees take nothing by their suit.

Reversed and rendered.