

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00203-CV

John F. **SONTAG**,
Appellant

v.

Sheila **CADENA**,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 28,080
Honorable Enrique Fernandez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  May 15, 2013

AFFIRMED

This appeal concerns whether the "Gift Assignment of Note and Deed of Trust," which was signed by Sam Salem before his death but by its terms was only effective ten days after Salem's death, was a valid assignment and transfer. Because we hold that it was not a valid assignment and transfer, we affirm the trial court's summary judgment.

### BACKGROUND

Sheila Cadena is the daughter of Sam Salem and his beneficiary under his will. As Salem's beneficiary, Cadena filed a petition for declaratory judgment against John F. Sontag,

seeking to invalidate a transfer made by her father to Sontag. Salem, Cadena's father, had loaned money to Samuel Garcia and Tracey Garcia ("the Church Defendants") for the purpose of establishing a church in Del Rio, Texas. To evidence and secure payment of this debt, the Church Defendants gave a promissory note and deed of trust. The first promissory note was payable to the order of Sam Salem in the amount of $148,000. It was secured by a vendor's lien and deed of trust dated February 9, 2006, and was recorded in Val Verde County, Texas. In 2009, the debt was refinanced. The "Renewal Balloon Promissory Note," dated March 20, 2009, was made payable to the order of Sam Salem in the amount of $132,222.22.

On August 16, 2009, Salem executed a will, leaving all his assets to his daughter Cadena, save and except for thirty dollars. On August 17, 2009, Salem passed away. Two days after Salem's death, a document titled "Gift Assignment of Note and Deed of Trust" was filed in the public records of Val Verde County. This assignment was signed by Salem and notarized on March 30, 2009. It states that Salem assigns to John F. Sontag the renewal balloon promissory note and deed of trust dated March 20, 2009, and recorded in Val Verde County. The document also states that the assignment will become effective ten days "after my death, with the date of my death to be counted as day one." "Any payments due the first nine days will be made to my Estate."

On September 23, 2009, Salem's will was admitted to probate in the County Court of Val Verde County. Letters testamentary were then issued to Cadena as independent executrix. On December 14, 2009, after learning that the Church Defendants were making payments on the renewal balloon promissory note to Sontag, Cadena filed a petition for declaratory judgment in the district court. In her petition for declaratory judgment, Cadena asked the court to declare that the assignment was invalid and unenforceable, and to order that it be stricken from the public records in Val Verde County. She also asked the court to award her all sums paid to Sontag by

the makers of the promissory note with interest. And, she asked for attorney's fees. She later moved for summary judgment, arguing that the assignment and transfer was invalid as a matter of law because by its own terms it was effective ten days after Salem's death. After Sontag filed a response, the trial court signed an order granting Cadena's motion for summary judgment. This order found that the assignment and transfer was invalid and unenforceable. It therefore struck the assignment and transfer from the public records of Val Verde County. The trial court later signed a final judgment, which included an award of attorney's fees to Cadena and past sums from the maker of the promissory note that had been paid to Sontag. Sontag now appeals.

### APPELLATE JURISDICTION

We must first address Cadena's argument that we lack jurisdiction over this appeal because Sontag's prematurely filed motion for new trial did not extend appellate timetables. On November 23, 2011, the trial judge sent the parties a letter stating that he intended to grant Cadena's motion for summary judgment. Also on November 23, 2011, the trial judge signed an order granting summary judgment. This order found the assignment and transfer to be legally invalid and unenforceable. It also struck the recording of the document from the public records of Val Verde County. This order, however, was not a final judgment as it did not dispose of all claims. On December 16, 2011, Sontag filed a motion for new trial, arguing that a new trial should be granted because the trial judge erred in determining the assignment and transfer was invalid. On January 9, 2012, before a final judgment was signed, the trial judge denied Sontag's motion for new trial. On January 10, 2012, Cadena then filed a Motion for Hearing For Judgment, Attorney's Fees, Interest and to Distribute Monies Held in the Court's Registry. On February 10, 2012, the trial judge signed a final judgment incorporating its former order granting summary judgment and awarding attorney's fees to Cadena and past sums from the maker of the promissory note that had been paid to Sontag. On April 3, 2012, Sontag filed a notice of appeal.

On appeal, Cadena argues that Sontag's notice of appeal was untimely because his motion for new trial, filed and ruled on before final judgment was signed, did not extend appellate timetables. For support, Cadena cites *Miller Brewing Co. v. Villarreal*, 822 S.W.2d 177, 179-80 (Tex. App.—San Antonio 1991), *rev'd on other grounds*, 829 S.W.2d 770 (Tex. 1992). In *Miller*, the court, noting that the appellants' motion to disregard jury findings was filed before the signing of the final judgment, reasoned that "[a]lthough the motion sought a substantive change in the verdict, the judgment subsequently signed was a judgment on that verdict and implicitly overruled the motion to disregard the jury's findings." *Id.* at 180. The court concluded that the motion was thus "no longer a live motion sufficient to extend the appellate timetable." *Id.*

However, since *Miller* was decided, the Texas Supreme Court has explained that courts should "treat[] minor procedural mishaps with leniency, preserving the right to appeal." *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011). And, "appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal." *Id.* Thus, the supreme court has held that "the filing of a motion for new trial or to modify the judgment, before the judgment is signed or within thirty days after, extends the deadline for filing a notice of appeal to ninety days." *Id.* at 666. In so holding, the supreme court explained that Texas Rule of Civil Procedure 329b provides that a motion for new trial is timely if it is filed "*prior to* or within thirty days after the judgment . . . complained of is signed." *Id.* at 665 (quoting TEX. R. CIV. P. 329b) (emphasis in original). "This 'prior to' language is supplemented and clarified by civil rule 306c, which provides that '[n]o motion for new trial . . . shall be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails." *Id.* at 665-66 (quoting TEX. R. CIV. P. 306c)

(alteration in original). The supreme court then reasoned that the "Rules of Appellate Procedure echo this concept in Rule 27.2, under which '[t]he appellate court may treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed.'" *Id.* (quoting TEX. R. APP. P. 27.2). Therefore, "a motion for new trial that complains of error brought forward in a subsequent judgment preserves those complaints on appeal to the extent they are applicable to that judgment." *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 562 (Tex. 2005). Such a motion will extend the appellate timetable on the judgment it assails. *Id.* Here, Sontag's motion for new trial complains of error brought forward in the final judgment signed by the trial judge and thus extends the appellate timetable.

Cadena emphasizes that Sontag's motion for new trial was denied by the trial judge before final judgment was signed and thus should not extend appellate timetables. However, the trial judge's denial of the motion for new trial was premature. A prematurely filed motion for new trial is "deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails." TEX. R. CIV. P. 306c. Thus, Sontag's motion for new trial did not become "live" until the date the trial judge signed the final judgment. *Bradley v. Peters*, No. 01-07-00081-CV, 2007 WL 4284659, at *2 (Tex. App.—Houston [1st Dist.] 2007, no pet.). And, the trial court's premature ruling on the motion for new trial did not prevent the motion from extending appellate timetables. *See id.* We therefore conclude we have jurisdiction over this appeal.

### TRIAL COURT JURISDICTION

In his first issue, Sontag argues that the trial court lacked subject matter jurisdiction. He contends that to grant a declaratory judgment, as requested by Cadena in her petition, the district court must have had independent jurisdiction. That is, Sontag emphasizes that the Declaratory

Judgment Act is not an independent source of subject-matter jurisdiction, but instead is available only when a court already has jurisdiction on the underlying controversy. *See State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994); *Continental Cas. Co. v. Rivera*, 124 S.W.3d 705, 712 (Tex. App.—Austin 2003, pet. denied). Sontag argues that the underlying controversy in this case is related to a probate proceeding and that the district court had no jurisdiction over such a proceeding. Cadena argues that Sontag has confused exclusive jurisdiction with dominant jurisdiction. We agree with Cadena.

Val Verde County does not have a statutory probate court, but instead has a statutory county court at law. Because Val Verde County lacks a statutory probate court, its statutory county court at law has probate jurisdiction. *See* TEX. GOV'T CODE ANN. § 25.003(d)-(f) (West Supp. 2012). This jurisdiction includes the ability to hear "all matters related to the probate proceeding as specified in Section 4B." TEX. PROB. CODE ANN. § 4A(a) (West Supp. 2012). Here, neither party disputes that the underlying declaratory action is one related to the probate proceeding filed in the Val Verde County Court at Law. Instead, Sontag argues that the Val Verde County Court at Law was *the only court* with jurisdiction to preside over the declaratory judgment action and that the district court lacked any jurisdiction to do so. However, while in this context the Probate Code grants the statutory county court at law jurisdiction to preside over matters related to the probate proceeding, it does not grant the statutory county court at law *exclusive* jurisdiction over such matters.[1] *See In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding). And, as a district court is one granted general jurisdiction over all matters by the

---

[1]Unlike in the present case, in a county where there is a *statutory probate court*, the Probate Code does explicitly state that "the statutory probate court has exclusive jurisdiction of all probate proceedings" and that "[a] cause of action related to the probate proceeding must be brought in a statutory probate court unless the jurisdiction of the statutory probate court is concurrent with the jurisdiction of a district court as provided by Section 4H of this code or with the jurisdiction of any other court." TEX. PROB. CODE ANN. § 4F(a) (West Supp. 2012). The Probate Code does not contain a similar provision with respect to counties that do not have a statutory probate court but have a statutory county court exercising original probate jurisdiction.

Texas Constitution, *see* TEX. CONST. art V, § 8, both the Val Verde District Court and the Val Verde County Court at Law had concurrent jurisdiction over Cadena's declaratory judgment action. *See In re Puig*, 351 S.W.3d at 305; *Green v. Watson*, 860 S.W.2d 238, 242-43 (Tex. App.—Austin 1993, no writ); *Mejorada v. Gonzalez*, 663 S.W.2d 891, 892 (Tex. App.—San Antonio 1983, no writ). Because the probate proceeding was initiated before Cadena filed the declaratory judgment action in district court, the Val Verde County Court at Law had dominant jurisdiction over the matter. *See In re Puig*, 351 S.W.3d at 305. That does not mean, however, that the county court at law had *exclusive* jurisdiction. *See id.* (explaining that when the jurisdiction of a county court sitting in probate and a district court are concurrent, the issue is one of dominant jurisdiction, not exclusive jurisdiction). We therefore hold that the district court did have subject matter jurisdiction over Cadena's declaratory judgment action.

### SUMMARY JUDGMENT

In her motion for summary judgment, Cadena emphasized that there is no inherent or common law legal right in Texas for one to transfer property to another at death and that any legally enforceable right for one to do so is purely statutory. She argued that the assignment and transfer was not valid as an inter vivos gift because it was not effective until ten days after Salem's death. And, she argued that the assignment and transfer is not a will because it does not comply with section 59 of the Texas Probate Code. She also argued it was not valid as a nontestamentary transfer pursuant to section 450 of the Texas Probate Code. Thus, she concluded that as a matter of law the assignment and transfer was invalid and unenforceable. The trial court agreed and granted summary judgment.

With regard to the trial court's granting of summary judgment, Sontag first argues that the assignment and transfer was a valid "present, nontestamentary transfer of a future interest, evidenced by symbolic delivery of the notes." And, he argues that there is a fact issue regarding

delivery that should be submitted to the jury. Sontag inadequately briefs this issue as he fails to explain how the element of delivery relates to the granting of summary judgment. The cases he cites for support relate to gifts. Thus, we construe this issue under the assumption that he is arguing there is a fact issue regarding whether the assignment and transfer was a valid inter vivos gift during Salem's lifetime. To the extent he is arguing otherwise, he has waived this issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1.

Cadena responds that as a matter of law the assignment and transfer cannot be a gift because, by its own terms, the effective date is ten days after Salem's death. We agree with Cadena. In order for there to have been a valid inter vivos gift, "there must have been a gratuitous and absolute transfer of the property from the donor to the donee, *taking effect immediately*, and fully executed by delivery of the property by the donor and an acceptance thereof by the donee." *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (emphasis added); *see also Land v. Marshall*, 426 S.W.2d 841, 845 (Tex. 1968) (explaining that "[t]o make a gift inter vivos the donor must part with the possession and control, and delivery is essential" and that a "gift inter vivos bestows on the beneficiary both the legal and equitable title"); *Baldwin v. Fleck*, 168 S.W.2d 904, 908-09 (Tex. Civ. App.—Galveston) (explaining that a gift cannot be made to take effect in the future as such a transaction would amount only to a promise or agreement to make a gift), *aff'd*, 141 Tex. 340 (1943). As this court explained in *Peterson v. Weiner*, 71 S.W.2d 544, 546 (Tex. Civ. App.—San Antonio 1934, writ ref'd), "[a] person cannot retain the use and full enjoyment of his property during his lifetime and provide that at his death it shall go to someone other than his legal heirs, without making a will, executed under the forms and solemnities provided by the statutes on the subject of wills." "If it were possible for a person to retain the full enjoyment of his property during his lifetime and be able to dispose of it after his death by transaction . . . , it would not be necessary to

execute a will in accordance with the statutes on the subject." *Id.* While "[i]t is true that a person may retain a life estate in property and convey the remainder to another," "under such circumstances the grantor only has the use of the property and cannot otherwise dispose of the property." *Id.* Here, however, by its own terms, Salem was not parting with any ownership of the promissory note until ten days after his death. He kept all indicia of ownership of the promissory note and had the ability to revoke his "gift." Indeed, his will, which he wrote *after* he signed the assignment and transfer, left his primary residence and "all of [his] residuary estate, including all of [his] property and personal property to [his] daughter Sheila Cadena to the exclusion of any other child of [his], provided that the said Sheila Cadena survive[d] [him] by ninety days." The only other specific bequests in his will are ten dollars to his son Anthony, ten dollars to his son Michael, and ten dollars to his son Emmit. We therefore hold that as a matter of law, the assignment and transfer is not a valid inter vivos gift.

Alternatively, Sontag argues that the assignment and transfer was a valid nontestamentary transfer pursuant to section 450 of the Probate Code. Section 450, titled "Provisions for Payment or Transfer *at Death*," provides the following:

> (a) Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, employees' trust, retirement account, deferred compensation arrangement, custodial agreement, pension plan, trust agreement, conveyance of real or personal property, securities, accounts with financial institutions as defined in Part 1 of this chapter, mutual fund account, or any other written instrument effective as a contract, gift, conveyance, or trust is deemed to be nontestamentary, and this code does not invalidate the instrument or any provision:
>> (1) that money or other benefits theretofore due to, controlled, or owned by a decedent shall be paid after his death to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently;
>> (2) that any money due or to become due under the instrument shall cease to be payable in event of the death of the promisee or the promissor before payment or demand; or

(3) that any property which is the subject of the instrument shall pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

TEX. PROB. CODE ANN. § 450(a) (West 2003).

In her motion for summary judgment, Cadena argued that the assignment and transfer does not fall within the purview of section 450, because the assignment and transfer was not effective upon Salem's death. Instead, the assignment and transfer states that it is effective "ten (10) days *after* [Salem's] death." Thus, Cadena argued that as a matter of law, the assignment and transfer was not legally valid. We agree with Cadena.

Section 37 of the Probate Code provides the following:

[w]hen a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, *shall vest immediately in the devisees or legatees* of such estate and the donees of such powers; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law, and subject to the payment of court-ordered child support payments that are delinquent on the date of the person's death . . . .

TEX. PROB. CODE ANN. § 37 (West 2003). At the time of his death, Salem left a lawful will. His will left his primary residence and all of his residuary estate, including all of his real and personal property, to Cadena. Thus, pursuant to section 37, at the time of Salem's death, the promissory note at issue vested immediately in Cadena. *See Smith v. Hodges*, 294 S.W.3d 774, 777 (Tex. App.—Eastland 2009, no pet.) ("Property devised under a will, duly probated, is deemed to vest title in the devisee as of the moment of death of the testator."). And, because the promissory note immediately vested in Cadena, it could not ten days later be legally transferred to Sontag pursuant to section 450 of the Texas Probate Code. We therefore hold the trial court did not err in finding that the assignment and transfer was invalid and unenforceable.

We affirm the judgment of the trial court.


Karen Angelini, Justice